Hi, I'm Max Ray from Brenda Diedrich with a Social Security case. Back on March 18, 2016, I submitted a citation to supplemental authorities, bringing to the Court's attention Social Security Ruling 16-3P. Now, 16-3P is a place where the agency provided a lot of clarification regarding some of its earlier procedures. They take out Social Security Ruling 96-7P and replace it with clearer wording. But they pretty much structure how one is to approach the question on evaluating your claimants' symptoms and indications. They say that you can look only at the objective medical record, only if that leads you to a fully favorable decision. If that doesn't take you to a fully favorable decision, then you're working on a symptom-based analysis, where you go through the symptoms and limitations that the claimant described and assess the evidence that supports them or takes away from them, using the standard articulated in the regulations for 1523C4. That really is consistent with the arguments that we had made in our initial briefing, even though this ruling clarification came out later as supportive of the analysis that we had presented. The most complex areas in this case are those of Step 5. The EOJ stated that to determine the extent to which the limitations erode the light and skilled occupational base, she asked the vocational expert where the jobs existed. Now, the identification of jobs alone cannot enable one to know the extent of the erosion. There has to be a comparison. You have to know where you were, and then the vocational expert will help you find out where you end up. And so doesn't the erosion analysis come into play only if the grids are used? No. The Social Security ruling, I would say that you use the grids as a framework. 8314 is pretty clear on this, and I've got to quote it, page 47 of my brief. It uses a framework. You start with the grid rule that approximates the exertion level, and then you say, well, how much is that job base eroded? And then you look at the other grid rules for guidance on whether or not that degree of erosion still leaves the climate with a sufficient opportunity where adjustment to other work would reasonably expect it. It's not just to some jobs. It's a reasonable opportunity for adjustment to other substantive work. That's the key thing. Is your argument that the grids always have to be considered regardless of whether or not the ALJ is relying on the grids to determine the residual functional capacity? Yes. So would you give me your case authority for the proposition that the grids must always be considered even if the ALJ is not relying on the grids for restoration? I have case authority. I have the regulations, and I have the Social Security rule, because I'm a lending and repaying firm. So you're saying the Social Security rule is 16.3? Makes that requirement that the grids must be determined in each case? No. 16.3p relates to the first set of contentions pertaining to the assessment of the climate symptoms and indications. When you move to step five, we're in the land where there's several 1880-era rulings. 83.14, again on page 47 of my brief, is most central, where it says that you look at a comparison between the occupational basis left after erosion and the guidance from the grids. Maybe I'm not making myself clear. What I'm trying to find out from you is what regulation requires the ALJ to consider the grids even if the ALJ is not using the grids in his or her determination? What regulation requires that? I can't quote for you. You're on. You've forgotten what I had. It's back in the section that pertains to the Island 404-16-2, if you remember exactly. But the Social Security rules make it very clear that grids must be used as a framework for decision. In all cases, framework means that it gives you an idea of when you consider the residual functional capacity along with the other factors of age, education, work experience, you really bear upon what this person can bring and what opportunities they need in order to be successful in the workplace. The significant numbers determination is not just an abstract number. It has to be grounded in a framework in order to be meaningfully responsive to the effects of age, education, and other factors that bear upon employment success. The final area that I want to address are the questions regarding the vocational experts, knowledge, and qualifications. Very commonly in these cases, in this case, for example, you have a person called as a vocationalist who has primarily worked at managing a caseload of people who, for one reason or another, need to be placed. There's a vast difference between working in your community where you live, helping to place people who need jobs, and being able to assess national labor market statistics and get evidence as to the number of jobs in an associated market. Dr. Pills, may I ask you if you're familiar with that precedent, Hill v. Astro? Are you familiar with that case? Hill v. Astro. No, ma'am. That case seems to say that the ALJ may rely on the grids, and then Gray v. Commissioner seems to say that the ALJ alternatively may need to meet its burden by consulting a vocational expert. Do you take issue with those cases? The case that I looked at was Thomas, and the question is, meet the burden of what? The expert is going to provide evidence. Thomas says that the ALJ's obligation to determine the claimant's occupational base may be by consulting a vocational expert in relation to the occupational base. Yes, the ALJ can go to the vocational expert to get information as to how many jobs there are, but that still leaves the determination of whether or not that number is sufficient to give this person opportunity. That's a separate decision of law to be made by the ALJ, and the grids provide the framework for that. Counsel, Judge Gould, if I can interject a question. I thought there was an issue raised in your briefing about whether the ALJ had to call an independent medical expert. Yes. Could you elaborate on that? I haven't had too many cases with that issue, so perhaps you could elaborate to when that must be done. The best case for the court to look at is Armstrong, and that's cited in my brief. Armstrong says Armstrong isn't dependent upon whether there is no prior evidence filed. Armstrong says that if it is not definite, if it is ambiguous, then the lay jury officer, the lay judge, needs the help of a medical professional to decipher what it all means. And so the key is finding ambiguity or a lack of definiteness in the onset date, and that's where I get it. It's from the Armstrong case. And what was the ambiguity in this case? In the record? Your Honor, the onset date for the SSI case was chosen based on application date because SSI can only be carried back to the application date. If it was clear the claimant was disabled at least that far back, then one needs to look at not only the evidence that showed the disability later, but implications showing how far back that had continued. We had testimony from a witness that it took us three months after the expiration of the date that I just ensured this person was functioning poorly. She was going in a lot of circumvisions. She was losing time. Was that the fiancee? Was that the fiancee? Yes, Your Honor. And then we have, we go back further, and we have a statement in the correctional records that say this person had had instances that had been called by an officer before. You go back further, you hit the family history. It's a medical determination that requires considerable skill to sort out the bipolar, the personality disorder, the attention deficit. And put that in a meaningful package that translates into how bad off was she? And it's hard for a medical statistician. Yes. Counsel, are you familiar with that case, Sam versus Castro? Sam. Sam. Is he young? No, he's very young. It appears to say that no medical expert is required when the ALJ finds that the claimant has never been disabled. And in this case, the claimant was found disabled on the same set of applications. She was found disabled for purposes of the SSI claim. The issue is, does it go back beyond the application date? And the application date has nothing to do with any of the facts pertaining to how disabled she was. It's the administrative date. No support, no questions.  Do we have time for a comment? Do we have time for a comment? Good morning. Your Honor, if I may please support. I'm David Burdett from Seattle, representing the Acting Commissioner of Social Security. It's very helpful. I want to correct. I do things that were misunderstood in the oral argument, I think, by my worthy opposing counsel. And then I want to circle back to the rule of concern about when a medical expert, that is, needs to be called a witness after we get to that. First of all, with regard to Social Security Ruling 16-3, that ruling is not applicable to this case. SSR 16-3 announced by its own terms that it was going to be effective in cases heard from 2016 forward. I believe from the end of March 2016 forward. In this case, as the Court is aware, is several years old. I believe the DOJ heard the case in 2012. It is a change in the agency's policies. It clarifies that we will not, going forward, the agency will not, going forward, do credibility evaluations in terms of the judgment of a person's credibility, the claimant's credibility. But going forward, in the cases that are heard after the effective date of SSR 16-3P, that will be evaluated in terms of consistency or inconsistency with the evidence. That is not applicable to this case. This case was heard years before that ruling was issued. In second place, with regard to whether or not ribs are required to be consulted in every case, whether or not there's a BE, they are not. As Judge Holmes indicated, in the case of Bray, there was another case. I was actually not familiar with Soakers as to why I have to confess, but Bray frequently cited. And also our case of Lockwood versus the Commissioner of Lockwood says, that's the sports case from 2010, 6-16-F-3-10-68. It says in page 1071, the Commissioner may meet the sentence filed, quote, in one of two ways, A, by testimony of the vocational expert, or B, by reference to medical vocational guidelines. The concern about the erosion of the occupational base is met when the vocational expert testifies. So that argument is without merit. Now, with regard to the concern that Judge Gould brought up about the allegation that a medical expert is required to testify, counsel cited the Armstrong case. Requires a hearing ME, a medical expert, to testify at the hearing. Bray, the evidence suggests that the claimant may have been disabled prior to the date of last insured. I put it that way because that's the requirement in Title II cases, and this is a Title II case. It was a Title II case that is Social Security Disability Insurance Benefits. That is different from Title 16, under which the claimant was found to be disabled later. As of 2009, this has been a Title II case, a Disability Insurance Benefits case under Title II of the Social Security Act. All the way up. The reason is because Ms. Diedrich's disability under Title 16, which has a different set of requirements and conceptually serves a different policy purpose, was found at an earlier stage of the administrative proceedings, before the case even got to the ALJ. The ALJ did not rule on Title 16. The ALJ did not rule on her disability. From August 2009 forward, the ALJ was looking only to see whether she was disabled under Title 16 of the Social Security Act, which required her to prove that she was unable to work at jobs to significant numbers in the national economy prior to her date last insured of June 2008. That is what the ALJ ruled on. That is what was appealed by Ms. Diedrich to the district court. That is what the district court said the ALJ probably did, and that is the appeal that Ms. Diedrich has taken to this court. There is no Title 16 matter before this court. Now, I believe you've judged well on this side of the case of Sam versus Esther, and it says at page 809, 550 F. 3rd, 808, page 809, Social Security ruling 8320 does not require a medical expert, meaning a medical expert to appear at the hearing, where the ALJ explicitly finds that the claimant has never been disabled. Here, the ALJ found for purposes of Title 2 that the claimant had never been disabled. He based that on medical evidence that suggested that. What's your response to opposing counsel's argument that the determination of disability in the Title 16 round carries over so as to preclude application of Sam voting in this case? Your Honor, it doesn't. It just doesn't. There is no authority for that, as we were discussing a minute ago. Two programs are different. People apply for them concurrently, as you know, but they are different. Let's have a chance to look at this case. What's your authority to say it doesn't carry over? You're saying that it doesn't. Well, there are cases on either side of that. Well, the question is, Your Honor, I talk about authority that says that it doesn't, but the matter is that which of these two programs is an ALJ judging during the administrative process, if you see what I mean. There is a Title 16 determination in this case, which was made by the ALJ. It was made regarding a later date, and so the ALJ wasn't put to the test of judging the Title 16 disability beginning in 2009. She was only put to the test of determining what the evidence supported about a Title 2 claim, which necessitated the claimant proving that she was disabled before her date last observed. Not a concept that we use in the Title 16 context. Is that helpful? Yes, thank you. So, in other words, your position is that the only disability determination that is an issue in this case is the Title 2 disability. That's correct, Your Honor. That's it, exactly. Now, I'd be happy to answer other questions about the substantive matters, but we're happy to rely on our brief on that. But I wanted to address a procedural point. There was an issue in the briefing regarding whether the claimant had two prior disability applications, both relating back to October of 2002, which was her earliest onset of disability. There was an issue regarding whether those were de facto reopened by the ALJ going back and reviewing that period during the hearing. We had earlier in the litigation taken the position that they weren't, but I think probably they were under this court's rule. So I think that is a procedural matter that doesn't bear on the validity of the ALJ's determination of the disability, but I bring it up just to say that in case the court disagrees, then, yes, the whole period going back to 2002 up until her date last year, 2008, is an issue. If there are no further questions, then we urge that the court affirm the case which is well-reasoned and supported by substantial evidence. Thank you. Thank you, Your Honor. Just a couple quick points. The claimant walks into the Social Security office. She applies for Title II Title 16. That's where this process starts. Counsel is correct that by the time this got to the ALJ, she had already been awarded 16, and the case at the ALJ level was only about two. But from a practical perspective, this citizen walks in and starts the process and gets awarded Social Security benefits under 16 and then has to continue on to, isn't in any practical way different, depending upon the stage at which the commissioner accepts the fact that disability exists. You're worried about 16-3P. Yes, on its face, it does have an effective date after this proceeding, but it's important to look at what the commissioner was trying to accomplish. Let clarified that subjective symptom evaluation is not an examination of the individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. Consistent with our regulations, I would expect the judicators to consider all the evidence in the individual's record at no time. The regulations require the analysis that I have argued. The ruling clarifies what the regulations, and those regulations are active in this case, was intended to mean. So it's not binding, but it is highly persuasive because you don't get the other issues that are bearing upon this case. Unless the court has further questions. It appears not. The petition's argument is submitted for a decision by the court and will be in recess for 10 minutes. Thank you.
judges: Tashima, Gould, Rawlinson